UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
ANTONIO MOLINA and
FRANCISCO HUERTA RAMOS

                Plaintiffs,

     -against-

PKFM CO. LLC d/b/a BRAVO PIZZA and
FRANK LIBRETTA

                Defendants.
-------------------------------------------------------------------- X

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Antonio Molina and Francisco Huerta Ramos ("Plaintiffs") by their attorneys Pechman Law Group PLLC, complaining of Defendants PKFM Co. LLC d/b/a Bravo Pizza ("Bravo Pizza") and Frank Libretta (collectively, "Defendants"), allege:

**NATURE OF THE ACTION**

1. Plaintiffs worked as cooks, cashiers, and food preparers at Bravo Pizza, an Italian pizzeria and restaurant located in Manhattan. Throughout their employment, Plaintiffs regularly worked over forty hours per workweek, but Defendants paid Plaintiffs on "straight-time" and salary bases that failed to compensate Plaintiffs with overtime pay at a rate of one and one-half (1 ½) times their regular wage rates for hours worked over forty per workweek. Defendants also failed to provide Plaintiffs with: (1) spread-of-hours pay when they worked shifts spanning over ten hours; (2) wage notices at their time of hire and when their wage rates changed; and (3) accurate wage statements with each payment of wages.

2. Plaintiffs bring this action to recover their unpaid overtime wages and spread-of-hours pay, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs under the Fair Labor Standards Act, 29 U.S.C. §

201, *et seq.* ("FLSA"), the New York Labor Law § 190, *et seq.* ("NYLL"), and the NYLL's Wage Theft Prevention Act, NYLL §§ 195, 198 ("WTPA").

## JURISDICTION

3. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiffs' NYLL and WTPA claims pursuant to 28 U.S.C. § 1367.

## VENUE

4. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because all events relevant to this action occurred at Bravo Pizza, which is located and operated by Defendants in the Southern District of New York.

## THE PARTIES

**Plaintiff Antonio Molina**

5. Antonio Molina ("Molina") resides in Queens County, New York.

6. Defendants employed Molina at Bravo Pizza as a cook and cashier from approximately December 2011 through July 19, 2022.

**Plaintiff Francisco Huerta Ramos**

7. Francisco Huerta Ramos ("Huerta") resides in Bronx County, New York.

8. Defendants employed Huerta at Bravo Pizza as a delivery worker and dishwasher from approximately August 2011 through August 2016, and as a food preparer from approximately September 2016 until July 2022.

**Defendant PKFM Co. LLC**

9. Defendant PKFM Co. LLC is a New York limited liability company that owns, operates, and does business as Bravo Pizza, located at 115 East 14th Street, New York, NY 10003.

10. Bravo Pizza is an "enterprise engaged in commerce" within the meaning of the FLSA.

11. Throughout Plaintiffs' employment, Bravo Pizza had employees, including Plaintiffs, engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

12. Within the three years prior to the filing of this Complaint, Bravo Pizza has had an annual gross volume of sales in excess of $500,000.

**Defendant Frank Libretta**

13. Frank Libretta ("Libretta") is an owner and principal of Bravo Pizza.

14. New York State Liquor Authority Division of Alcoholic Beverage Control filings identify Libretta as a principal of Bravo Pizza.

15. As an owner and principal of Bravo Pizza, Libretta held ultimate power and authority over personnel decisions at Bravo Pizza, including the power to discipline employees, hire and fire employees, set employee schedules, set employee wage rates, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

16. Throughout Plaintiffs' employment, Libretta exercised this power and authority personally and through managers at Bravo Pizza, including through manager Mike Libretta.

17. For example, when Plaintiffs discussed increases to their wage rates with Mike Libretta, Mike Libretta stated that he would need to get approval from Libretta to authorize any change in Plaintiffs' wage rates.

18. Libretta exercised sufficient control over Bravo Pizza's operations and Plaintiffs' employment to be considered their employer under the FLSA and NYLL.

**FACTUAL ALLEGATIONS**

**Antonio Molina's Wages and Hours Worked**

19. From approximately January 2016 through mid-March 2020, Molina regularly worked: (1) ten-hour shifts, from approximately 8:00 a.m. to 6:00 p.m., on Tuesday through Saturday, and (2) a fourteen-hour shift, from approximately 9:00 a.m. to 11:00 p.m., on Monday, totaling approximately sixty-four hours per workweek.

20. While Molina regularly worked approximately sixty-four hours per workweek during this period, his shifts would sometimes run longer and/or he would sometimes work an additional day.

21. For example, for the workweek running from January 21 through January 27, 2019, Molina worked: (1) a ten-hour and thirty-minute shift on January 21, from 10:44 a.m. to 9:04 p.m.; (2) an eleven-hour and fourteen-minute shift on January 22, from 10:03 a.m. to 9:17 p.m.; (3) a nine-hour and two-minute shift on January 23, from 9:11 a.m. to 6:13 p.m.; (4) a twelve-hour and four-minute shift on January 24, from 9:06 a.m. to 9:10 p.m.; (5) a thirteen-hour and fifty-minute shift on January 25, from 9:10 a.m. to 11:00 p.m.; (6) a fourteen-hour and seven-minute shift on January 26, from 9:11 a.m. to 11:18 p.m.; and (7) a ten-hour and fifty-six-minute shift on January 27, from 2:13 p.m. to 11:09 p.m., totaling eighty-one hours and forty-three minutes.

22. From approximately mid-March 2020 through April 2022, Molina regularly worked seven-hour shifts, from 9:00 a.m. to 4:00 p.m., six days per week, totaling approximately forty-two hours per workweek.

23. From approximately May 2022 until July 2022, Molina regularly worked eight-hour shifts, from 8:00 a.m. to 5:00 p.m., six days per week, totaling approximately forty-eight hours per workweek.

24. In 2016 and 2017, Defendants paid Molina $13 per hour worked, including hours worked over forty per workweek.

25. In 2018, Defendants paid Molina $14 per hour worked, including hours worked over forty per workweek.

26. In 2019, Defendants paid Molina $15 per hour worked, including hours worked over forty per workweek.

27. For example, for the week of January 21 through January 27, 2019 referenced in Paragraph 22 above, Defendants paid Molina $1,215 for eighty-one hours of work, equivalent to $15 per hour worked.

28. In 2020, 2021, and 2022, Defendants paid Molina $16 per hour worked, including hours worked over forty per workweek.

**Francisco Huerta Ramos's Wages and Hours Worked**

29. From approximately September 2016 through mid-March 2020, Huerta regularly worked eight- to ten-hour shifts, from 9:00 a.m. until between 5:00 and 7:00 p.m., six days per week, totaling between forty-eight and sixty hours per workweek.

30. Huerta's shifts during this period sometimes spanned over ten hours. For example, on March 1, 2018, Huerta worked a ten-hour and nine-minute shift, from 9:14 a.m. until 7:23 p.m.

31. From approximately mid-March 2020 to September 2021, Huerta regularly worked three-hour shifts, from 9:00 a.m. to 12:00 p.m., six days per week, totaling approximately eighteen hours per workweek.

32. From approximately October 2021 through July 2022, Huerta regularly worked (1) eight- or nine-hour shifts, from 9:00 a.m. to between 5:00 and 6:00 p.m., three days per week (Monday through Wednesday); (2) nine- or ten-hour shifts, from 9:00 a.m. to between 6:00 and 7:00 p.m., two days per week (Thursday and Friday); and (3) a nine-

hour shift, from 9:00 a.m. to 6:00 p.m., on Saturdays, totaling between fifty-one and fifty-six hours per workweek.

33. From approximately 2016 through mid-March 2020, Defendants paid Huerta $725 per workweek.

34. From approximately mid-March 2020 through September 2021, Defendants paid Huerta $350 per workweek.

35. From approximately October 2021 through July 2022, Defendants paid Huerta $750 per workweek.

**Allegations Applicable to Both Plaintiffs**

36. Defendants did not pay Plaintiffs spread-of-hours pay on days when they worked shifts spanning over ten hours.

37. Defendants did not provide Plaintiffs with wage notices at their time of hire or when their wage rates changed.

38. Throughout their employment, Defendants paid Plaintiffs' wages without accompanying wage statements accurately reflecting, *inter alia,* their hours worked, and hourly rates paid.

## FIRST CLAIM
### (FLSA – Unpaid Overtime Wages)

39. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

40. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiffs.

41. Defendants were required to pay Plaintiffs overtimes wages at a rate of one and one-half (1 ½) times their regular hourly rates for all hours worked in excess of forty hours per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, *et seq*.

42. Defendants failed to pay Plaintiffs the overtime wages to which they were entitled under the FLSA

43. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs overtime wages.

44. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to Plaintiffs' compensation.

45. As a result of Defendants' willful violations of the FLSA, Plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

## SECOND CLAIM
### (NYLL – Unpaid Overtime Wages)

46. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

47. Defendants are employers within the meaning of the NYLL §§ 190, 651(6), 652, and supporting New York State Department of Labor ("NYDOL") regulations, and employed Plaintiffs.

48. Pursuant to the NYLL and supporting NYDOL regulations, including 12 N.Y.C.R.R. § 146-1.4, Defendants were required to pay Plaintiffs one and one-half (1½) times their regular hourly rates of pay for all hours worked in excess of forty per workweek.

49. Defendants failed to pay Plaintiffs the overtime wages to which they were entitled under the NYLL and its supporting regulations.

50. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs overtime wages.

51. As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

### THIRD CLAIM
### (NYLL – Spread-of-Hours Pay)

52. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

53. Defendants willfully failed to pay Plaintiffs additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which they worked more than ten hours, in violation of the NYLL and its supporting NYDOL regulations, including 12 N.Y.C.R.R. § 146-1.6.

54. Asa result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their unpaid spread-of-hours pay, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

### FOURTH CLAIM
### (NYLL WTPA – Failure to Provide Wage Notices)

55. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

56. The NYLL's WTPA requires employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

57. In violation of NYLL § 195(1), Defendants failed to furnish Plaintiffs at the time of hiring, or whenever their rate(s) of pay changed, with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main

office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

58. As a result of Defendants' violations of NYLL § 195(1), Plaintiffs are entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1–b).

### FIFTH CLAIM
### (NYLL WTPA – Failure to Provide Wage Statements)

59. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

60. The NYLL's WTPA requires employers to provide employees with an accurate wage statement with each payment of wages.

61. Defendants failed to furnish Plaintiffs, with each payment of wages, with a statement accurately listing: rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

62. As a result of Defendants' violations of NYLL § 195(3), Plaintiffs are entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-d).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

    a.    declare that Defendants violated the overtime wage provisions of the FLSA, NYLL, and supporting regulations;

    b.    declare that Defendants violated the spread-of-hours pay provisions of the NYLL and supporting regulations;

    c.    declare that Defendants violated the wage notice and wage statement provisions of the NYLL's WTPA;

    d.    declare that Defendants' violations of the FLSA and NYLL were willful;

    e.    enjoin and permanently restrain Defendants from further violations of the FLSA and NYLL;

    f.    award Plaintiffs damages for unpaid overtime wages;

    g.    award Plaintiffs damages for unpaid spread-of-hours pay;

    h.    award Plaintiffs liquidated damages;

    i.    award Plaintiffs statutory damages as a result of Defendants' failure to furnish Plaintiffs with wage notices and accurate wage statements as required by the NYLL's WTPA;

    j.    award Plaintiffs pre- and post-judgment interest under the NYLL;

    k.    award Plaintiffs reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

    l.    award such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated: New York, New York
November 16, 2022

                           PECHMAN LAW GROUP PLLC

                           By: */s/ Louis Pechman*
                                Louis Pechman
                                Galen C. Baynes
                                488 Madison Avenue, 17th Floor
                                New York, New York 10022
                                Tel.: (212) 583-9500
                                pechman@pechmanlaw.com
                                baynes@pechmanlaw.com
                                *Attorneys for Plaintiffs*